CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

ADAM D. STRAIT (Mass. BBO No. 670484)
MICHELLE C. JOHNS (Texas SBN 24010135)
PAUL T. BUTLER (MD Bar No. 9406230037)
Trial Attorneys
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, D.C. 20044-0683
Telephone: (202) 307-2135
Fax: (202) 307-2135
adam.d.strait@usdoj.gov

*Of counsel:*
RICHARD L. DURBIN
United States Attorney
Western District of Texas

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, and TEXAS ASSOCIATION OF BUSINESS, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES INTERNAL REVENUE SERVICE, *et al.,* <br><br> *Defendants.* | No. 1:16-cv-944-LY <br><br> **Defendants' Reply in Support of Motion to Dismiss** |

# TABLE OF CONTENTS

I. **Allergan Would Lack Standing Because, Without a Specific Future Merger, It Does Not Have a Sufficient Likelihood of Economic Harm.** ............................................................................... 1

II. **This Suit Seeks to Restrain the Assessment of Corporate Income Tax, and It Is Barred by the Anti-Injunction Act.** .................... 5

    A. The Anti-Injunction Act Bars Pre-Enforcement Facial Challenges for the Purpose of Restraining Assessment or Collection of Tax. ........................................................................ 6

    B. The Anti-Injunction Act Applies Regardless of Whether There Is a "Live Dispute" ........................................................................ 9

    C. The Plaintiffs Do Not Fit Within the Judicial Exceptions. ........................ 13

III. **Conclusion** ................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .................................................. 7

*Alliance for Clean Coal v. Miller*, 44 F.3d 591, 594 (7th Cir. 1995)........................... 1

*Am. Fed. of State, County, & Mun. Employees v. Scott*, 717 F.3d 851 (11th Cir. 2013) ........................................................................................................... 8

*Ariz. Christian School Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ................... 13

*Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974) ........................................ 7, 9, 10, 13

*Bryant v. Yellen*, 447 U.S. 352 (1980) ....................................................................... 4

*California ex rel. Deukmejian v. Regan*, 641 F.2d 721 (9th Cir. 1981) ..................... 10

*Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) ............................ 1, 17

*Clinton v. City of New York*, 524 U.S. 417 (1998).......................................... 2, 3, 4, 5

*Commissioner v. Shapiro*, 424 U.S. 614 (1976) ....................................................... 15

*Debt Buyers Ass'n v. Snow*, 481 F. Supp. 2d 1 (D.D.C. 2006) .................................. 9

*Direct Marketing Ass'n v. Brohl*, 575 U.S. ___, 135 S.Ct. 1124 (Mar. 3, 2015) ...................................................................................................... 11, 12, 13

*Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962)........................... 9, 14, 15

*Florida Bankers Ass'n v. U.S. Dep't of Treas.*, 799 F.3d 1065 (D.C. Cir. 2015) ............................................................................................................ 7, 8, 11

*Foodservice and Lodging Inst., Inc. v. Regan*, 809 F.2d 842 (D.C. Cir. 1987)............. 8

*Hotze v. Burwell*, 784 F.3d 984 (5th Cir. 2015) ........................................................ 8

*Lucia v. United States*, 447 F.2d 912 (5th Cir. 1971) (panel opinion) ...................... 15

*Lucia v. United States*, 474 F.2d 565 (5th Cir. 1973) (en banc) ............................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................. 5

*Maze v. IRS*, ___ F. Supp. 3d ___, 2016 WL 4007075 (D.D.C. July 25, 2016) ....... 9, 12

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993) .......................................................................................... 1, 2

*Rusk v. Cort*, 369 U.S. 367 (1962) ............................................................................ 7

*Smiley v. Citibank (South Dakota) N.A.*, 517 U.S. 735 (1996)......................................2

*Smith v. Booth*, 823 F.2d 94 (5th Cir. 1987) .................................................................6

*South Carolina v. Regan*, 465 U.S. 367 (1984) ......................................................13, 14

*Texas Cable & Telecomms. Ass'n v. Hudson*, 265 Fed. Appx. 210 (2008)...................2

*Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630 (5th Cir. 2012)..............................2

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008)...........................9

*Wyoming Trucking Ass'n v. Bentsen*, 82 F.3d 930 (10th Cir. 1996)...........................8

## Statutes

28 U.S.C. § 1341 (Tax Injunction Act, or TIA)......................................................11, 12

28 U.S.C. § 2201(a) (Declaratory Judgment Act) ......................................................12

5 U.S.C. § 702 ..................................................................................................................6

I.R.C. § 7421(a) (Anti-Injunction Act, or AIA) ................................................... passim

I.R.C. § 7874..................................................................................................................13

## Legislative History

H.R. Rep. No. 94-1656 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121 .........................6

The Plaintiffs' Opposition (Dkt. 45) to the Defendants' Motion to Dismiss (Dkt. 31) fails to show that this Court has subject-matter jurisdiction. The Plaintiffs have failed to allege an injury that would justify prospective relief, and the relief they seek is barred by the Anti-Injunction Act, I.R.C. § 7421(a).

## I. Allergan Would Lack Standing Because, Without a Specific Future Merger, It Does Not Have a Sufficient Likelihood of Economic Harm.

The Plaintiffs stake their standing argument on Allergan plc, claiming that it would have standing to challenge Temp. Treas. Reg. § 1.7874-8T ("the Rule"). But the Plaintiffs do not allege that Allergan has concrete plans to engage in any merger that would certainly be affected by the Rule. As a result, any injury Allergan purports to have is neither sufficiently concrete nor imminent to create standing.

The Plaintiffs first argue that the Rule discriminates against Allergan, but that claim rests on inapposite case law. The cases the Plaintiffs cite turn on a constitutional right to be treated equally. *See, e.g.*, *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661, 665-66 (1993) (plaintiff could raise Equal Protection Clause challenge to race- and sex-based set-aside program for city contracts, regardless of whether it would have won the contract); *Alliance for Clean Coal v. Miller*, 44 F.3d 591, 594 (7th Cir. 1995) (plaintiffs could raise Commerce Clause challenge to program that "impinge[d] on [out-of-state companies'] rights to compete on an equal footing in interstate commerce," even without specific lost deals). That is, the denial of equal treatment is the relevant injury in fact, not necessarily the economic consequences of the denial of equal treatment. The Fifth Circuit followed the same principle in *Time Warner Cable,*

*Inc. v. Hudson*, 667 F.3d 630 (5th Cir. 2012). Even though the plaintiffs "allegedly failed to prove any concrete economic damages," *id.* at 635, the Court held that they had standing because they were excluded from a "benefit provided to similarly situated speakers," *id.* at 637—a First Amendment violation. *See id.* at 638-39).[1]

The Plaintiffs here raise no constitutional claim, and no clear discrimination claim, on Allergan's behalf. To be sure, they allege the Rule was "gerrymandered . . . to specifically target" Allergan's merger with Pfizer Inc. (Compl. ¶ 61.) But the Rule is facially neutral and has significantly broader application than Allergan and Pfizer. Even taking all of the "targeting" allegations as true, standing alone, they do not show Allergan was harmed. *See Smiley v. Citibank (South Dakota) N.A.*, 517 U.S. 735, 740-41 (1996) (whether regulation was prompted by litigation irrelevant to its validity). The Plaintiffs must also show some concrete economic injury.

In an attempt to do so, the Plaintiffs insist that Allergan has a concrete, ongoing economic harm because it "can no longer offer tax benefits under Section 7874 to prospective merger partners, while its competitors still can." (Plfs. Opp. 4-5.) But that is wrong: Allergan *can* still offer tax benefits to U.S. merger partners,

---

[1] In a dictum footnote in a previous, unpublished opinion in the same case, the Fifth Circuit went farther, stating that *any* discrimination constitutes an injury in fact, even if the discrimination is not of constitutional moment. *See Texas Cable & Telecomms. Ass'n v. Hudson*, 265 Fed. Appx. 210, 218 n.3 (2008). The Court should not follow that footnote, because it relies on an erroneous reading of a footnote in *Clinton v. City of New York*, 524 U.S. 417, 433 n.22 (1998). In *City of New York*, the Supreme Court found that the plaintiff suffered a sufficient likelihood of economic injury to create standing. *See id.* at 432-33. In context, its reference to *Associated General Contractors* suggests only that completion of a deal is not necessary to show *economic* harm, not that constitutional and non-constitutional discrimination constitute the same kind of injury in fact. *See id.* at 432-33 & n.22.

provided they are under a certain size limit; it *can* still bid on an equal footing for non-U.S. corporations; it *can* bid on U.S. corporations of increasing size as its previous mergers age out.  To the extent the Complaint says the Rule "significantly limits and burdens" *all* "prospective opportunities to merge with U.S. corporations" (Compl. ¶ 47), it is implausible on its face, given the scope of the Rule.  Instead, whether Allergan has an injury—and thus the Plaintiffs' standing—rises or falls on the conclusory allegation that "if the Rule were set aside, then Allergan would actively pursue merger opportunities otherwise burdened by the Rule." (*Id.*)

Their standing falls, and this is why: it is impossible to say, without knowing the specific target, that any "merger opportunity" is "burdened by the Rule." Suppose Allergan were to bid for Biogen Inc., as the Plaintiffs suggest.  (Plfs. Opp. 8.)  Whether the merger would come within the Rule's scope depends on the companies' market capitalizations when the agreement was signed; whether Allergan agreed to pay a premium above Biogen's share price; how the merger was structured; and, because of Allergan's prior acquisitions, when the deal was signed.

The fact that the Rule does not apply to all of Allergan's potential acquisitions is what distinguishes this case from *Clinton v. City of New York*, 524 U.S. 417 (1988).  In that case, the President used the line-item veto to cancel a tax benefit that would have applied to *all* sales of a food processing facility to a farmers' cooperative.  *See* 524 U.S. at 423-24.  The Snake River farmer's cooperative did not need to identify a specific target because the canceled tax benefit would have applied to *every* target; the purchase of a processing facility was the sole purpose for

which the cooperative was formed; it was "actively searching" for targets; and there were "ample processing facilities" for it to buy—thus creating a "sufficient likelihood of economic injury." *See id.* at 432-33.

*Bryant v. Yellen*, 447 U.S. 352 (1980), similarly concerned a law that affected all of a certain type of transaction. The merits question was the application of a reclamation law providing that no single landowner could hold a tract of more than 160 acres and receive reclamation-project water. 447 U.S. at 355. Furthermore, excess acreage had to be sold at a price fixed by the Secretary of the Interior for dry land, not irrigated land—a much lower figure. *Id.* at 367 n.17. Prospective buyers had standing to seek enforcement of the statute because, if they prevailed, all 800 landowners would be put to the choice of selling acreage or receiving water. It was "likely" that at least some of them would choose to sell, *id.* at 368—but it was certain that any who did would sell at less than market price, which otherwise was "unlikely," *id*. The third-party landowners' actions were merely likely, but the effect of the government's action was certain. Here, even assuming that the requisite actions by a third party—namely, negotiating a merger with Allergan— are sufficiently "likely," without a named target, Plaintiffs have not pleaded enough facts to show that the Rule will affect that particular transaction.

Absent concrete plans for a merger that would necessarily be affected by the Rule, and with all of the other conditions and contingencies to which a large corporate merger is subject, there is no present, concrete harm to Allergan. Therefore, the Rule does not *now* deprive Allergan of a "statutory bargaining chip,"

so it does not "inflic[t] a sufficient likelihood of economic injury" to constitute an injury in fact. *City of New York*, 524 U.S. at 432. At most, the Rule *might* do so at some point in the future. And even if the Rule might affect some future, still-speculative acquisition by Allergan, that injury is not sufficiently imminent to constitute an injury in fact in this case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992) (imminence standard not met where "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control").[2]

## II. This Suit Seeks to Restrain the Assessment of Corporate Income Tax, and It Is Barred by the Anti-Injunction Act.

The Anti-Injunction Act bars suits "for the purpose of restraining the assessment or collection" of federal taxes. I.R.C. § 7421(a). The indisputable aim of this suit is to prevent the government from assessing and collecting corporate income tax in situations where the Rule applies. The Plaintiffs do not, and cannot, seriously contest that fundamental point. Instead, they argue that the AIA does not reach this particular type of challenge to the government's taxing powers.

Those arguments are meritless. Contrary to the Plaintiffs' proposed distinction between pre-enforcement facial challenges and as-applied challenges, the touchstone of AIA jurisprudence is the relief the suit seeks. If the relief would

---

[2] The Complaint is so vague that the Court should hold that the Plaintiffs have failed even to allege an injury in fact. But if the allegations are sufficient to survive a motion to dismiss (and the Court holds that the Anti-Injunction Act does not apply), the Court should hold the Plaintiffs' Motion in abeyance pending jurisdictional discovery in order to avoid ruling on difficult and important issues when it might lack subject-matter jurisdiction.

restrain the assessment or collection of tax, the suit is barred—regardless of

whether it is framed as a facial challenge. Nor does it matter that there is no "live"

tax dispute. Courts, including the Supreme Court, have applied the AIA even in the

absence of a specific taxpayer's liability. Finally, the Plaintiffs have failed to show

that they fit within the judicial exceptions to the Anti-Injunction Act.

### A. The Anti-Injunction Act Bars Pre-Enforcement Facial Challenges for the Purpose of Restraining Assessment or Collection of Tax.

The Plaintiffs propose a broad distinction between pre-enforcement facial

challenges and as-applied challenges. Their argument is unsupported by case law

or the statutory text, and it is unworkable in practice.

To begin with, it is clear that to the extent that the Administrative Procedure

Act and the AIA conflict, the AIA prevails. In 5 U.S.C. § 702, Congress broadly

provided for judicial review of administrative action. But even as it did so, it

recognized that there were situations in which the principle of broad review would

conflict with other laws. Accordingly, in the same statute, Congress stated that

"[n]othing herein . . . affects other limitations on judicial review." § 702. The AIA is

just such a limitation. *See Smith v. Booth*, 823 F.2d 94, 97-98 (5th Cir. 1987).

Confirming the statute's plain language, "[t]he legislative history of the 1976

amendment to [§ 702] specifically notes that the Anti-Injunction and the

Declaratory Judgment Acts' prohibitions . . . remain unaffected by the revised

section 702." *Id.* (citing H.R. Rep. No. 94-1656 (1976), *reprinted in* 1976

U.S.C.C.A.N. 6121, 6132-33).

Given Congress's express instructions in both the APA and the AIA, the Court need not follow the Plaintiffs in straining to narrow the scope of the AIA. Although the Plaintiffs cite the Supreme Court's broad language in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), and *Rusk v. Cort*, 369 U.S. 367 (1962), they rob it of context by ignoring the questions of statutory construction the Court confronted in those cases, neither of which involved the AIA or a similar statute. In *Rusk*, the dispute turned on whether provisions for judicial review in the Immigration and Nationality Act implicitly overrode the APA. *See* 369 U.S. at 372-74. Likewise, in *Abbott Labs*, the government argued that review provisions in the Food, Drug, and Cosmetic Act for some types of regulations implicitly precluded judicial review of other types. *See* 387 U.S. at 141-42. Here, by contrast, the Congressional limitation on judicial review is *explicit*. The AIA is to be given "almost literal effect." *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974). That is "clear and convincing evidence" of Congressional intent to withdraw cases from the reach of the APA. *Rusk*, 369 U.S. at 380. Accordingly, the Court can give full effect to both laws simply by enforcing the AIA as written. *See Florida Bankers Ass'n v. U.S. Dep't of Treas.*, 799 F.3d 1065, 1066-67 (D.C. Cir. 2015), *cert. denied*, 136 S.Ct. 2429 (June 6, 2016) (stating that AIA "creates a narrow exception to the general administrative law principle that pre-enforcement review of agency regulations is available in federal court" and distinguishing *Abbott Labs*).

Nothing in the AIA's text distinguishes between facial and as-applied challenges, and for good reason. The Plaintiffs' construction would permit

taxpayers to evade the bar by framing their complaint in the right way.  "[T]he line

between facial and as-applied relief is a fluid one, and many . . . challenges may

occupy an intermediate position on the spectrum between purely as-applied relief

and complete facial invalidation."  *Am. Fed. of State, County, & Mun. Employees v.

Scott*, 717 F.3d 851, 865 (11th Cir. 2013).  The Plaintiffs' distinction is unworkable.

It is also unsupported by case law.  Courts have repeatedly, indeed routinely,

held that the AIA bars facial challenges to tax statutes.  Contrary to the Plaintiffs'

claim (Plfs. Opp. 23 n.5), the Fifth Circuit is among them.  In *Hotze v. Burwell*, 784

F.3d 984 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1165 (Feb. 29, 2016), the plaintiffs

raised a facial Origination Clause challenge to the employer mandate in the

Affordable Care Act.  The court held that the employer's challenge was barred by

the AIA.  *Id.* at 999.  *See also, e.g.*, *Wyoming Trucking Ass'n v. Bentsen*, 82 F.3d 930,

932-33 (10th Cir. 1996) (holding that AIA barred facial pre-enforcement challenge to

constitutionality of gasoline excise tax statute).  And courts have likewise

interpreted the AIA to bar facial challenges to tax rules and regulations, including

those raised under the APA.  *See Florida Bankers*, 799 F.3d at 1067-68 (holding

that AIA barred APA challenge to regulation requiring banks to report interest paid

to non-resident aliens); *Foodservice and Lodging Inst., Inc. v. Regan*, 809 F.2d 842,

844-45 (D.C. Cir. 1987) (per curiam) (holding that AIA barred pre-enforcement

challenge to regulations concerning employer's allocation of tip income to employees

and which employers were subject to statute); *Maze v. IRS*, ___ F. Supp. 3d ___,

2016 WL 4007075, at *14 (D.D.C. July 25, 2016), *appeal docketed*, No. 16-5265 (D.C.

Cir.) (holding that AIA barred APA challenge to transition rules for Offshore Voluntary Disclosure Program); *Debt Buyers Ass'n v. Snow*, 481 F. Supp. 2d 1, 9-14 (D.D.C. 2006) (holding that AIA barred challenge to regulation requiring debt buyers to report amount of debt discharged).

### B. The Anti-Injunction Act Applies Regardless of Whether There Is a "Live Dispute"

Congress created a comprehensive statutory scheme that generally limits tax litigation in the district courts to refund suits. *See, e.g.*, *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 5-10 (2008). The AIA and counterpart language in the Declaratory Judgment Act, 28 U.S.C. § 2201(a), channel taxpayer challenges to the government's construction and application of the law to the specific avenues that Congress has prescribed. *See Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 8 (1962) (explaining that "a collateral objective" of the AIA is the "protection of the collector from litigation pending a suit for refund"). The Plaintiffs argue that the AIA does not apply where "there has been no particularized determination . . . , and there is no live dispute over anyone's particular tax liabilities." (Plfs. Opp. 26.) That contradicts case law, including Supreme Court case law. The practical effect of the relief the Plaintiffs seek is what matters, not the presence of a "live dispute."

The Supreme Court's decision in *Bob Jones University* is one example. In that case, the IRS threatened to withdraw the university from the list of tax-exempt organizations eligible to receive charitable deductions because of its race-based admissions policies, and the school sued for declaratory and injunctive relief. 416 U.S. at 735. The Court held that the AIA applied. *See id.* at 737. The Plaintiffs

dismiss *Bob Jones University* as addressing only the university's own tax liabilities.

(*See* Plfs. Opp. 25-26, 28.)  But the opinion goes farther:

> Moreover, petitioner seeks to restrain the collection of taxes *from its donors*—to force the Service to continue to provide advance assurance to those donors that contributions to petitioner will be recognized as tax deductible, thereby reducing their tax liability. Although in this regard petitioner seeks to lower the taxes of those other than itself, the [Anti-Injunction] Act is nonetheless controlling.  Thus in any of its implications, this case falls within the literal scope and the purposes of the Act.

416 U.S. at 739 (emphasis added) (footnote omitted).  Plainly, with respect to the

school's donors, there was "no live dispute over anyone's particular tax liabilities."

The donors' identity was not established, their income not settled, the donations not

yet made.  The Supreme Court held that the Act still applied.

Another example is *California ex rel. Deukmejian v. Regan*, 641 F.2d 721 (9th

Cir. 1981).  In *California*, the State challenged a statute requiring it to file an

information return showing whether its retirement plan was "qualified" under

I.R.C. § 401(a), entitling the participants to favorable tax treatment.  *Id.* at 722.

The Ninth Circuit held that the suit was barred by the AIA because the filing

requirement "will have an impact on the assessment of federal taxes"—the

*participants'* taxes.  *Id.*  There was no "live dispute" over the participants' taxes.

Nor can the Plaintiffs evade the AIA by framing this suit as a challenge to an

"abstract rul[e] for how the IRS will compute a tax when it comes due."  (Plfs. Opp.

19.)  Statutes are also "abstract rules" governing the computation of taxes, but as

explained above, courts have consistently held that facial challenges are barred by

the AIA.  In addition, the D.C. Circuit recently rejected a closely related contention

in *Florida Bankers*. In that case, two banking associations sued under the APA to set aside a regulation that required their member banks to report interest paid to certain foreign account-holders. The reporting regulation, which had no direct tax effect itself, was enforced by a separate statutory penalty. *See* 799 F.3d at 1067. The plaintiffs argued that they were not suing over the penalty, only over the reporting requirement, *see id.* at 1070—just as the Plaintiffs claim here that they are not seeking to enjoin a tax, only the rules for the computation of a tax. The D.C. Circuit held that the Anti-Injunction Act barred the suit. It explained that the "challenge to the reporting requirement is necessarily also a challenge to the [penalty treated as a] tax imposed for failure to comply with that reporting requirement." *Id.* at 1071. Here too, a challenge to rules under which a tax is computed is a challenge to the imposition of the tax itself.

None of these cases are undermined by *Direct Marketing Association v. Brohl*, 575 U.S. ___, 135 S.Ct. 1124 (Mar. 3, 2015). In *Direct Marketing,* Colorado passed a law requiring retailers that do not collect Colorado sales or use tax to notify Colorado customers of their use tax liability and to report tax information to customers and the Colorado Department of Revenue. The plaintiff claimed that the reporting requirement violated the Commerce Clause. The State argued that the challenge was barred by the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"). The Supreme Court disagreed, holding that "[t]he TIA is keyed to the acts of assessment, levy, and collection themselves, and enforcement of the notice and reporting requirements is none of these." 135 S.Ct. at 1131. The Court also

explained that "a suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely inhibits those activities." *Id.* at 1133.

The Plaintiffs misread the Supreme Court's decision in two ways. First, they ignore the textual differences between the TIA and AIA, instead claiming that *Direct Marketing* interprets the AIA's plain text. (Plfs. Opp. 19.) While it is true that the Supreme Court assumed "that words used in both Acts are generally used in the same way," *id.* at 1129, that does not mean the two statutes are congruent—especially when the Supreme Court was not asked to examine them side by side. *Direct Marketing* held that the word "restrain" in the TIA was to be read narrowly, relying substantially on the fact that "restrain" was listed alongside "enjoin" and "suspend" in the statute, *id.* at 1132, whereas the AIA uses "restrain" by itself:

> The Supreme Court explained that the words 'suspend' and 'enjoin' 'refer to different equitable remedies that restrict or stop official action to varying degrees, strongly suggesting that 'restrain' does the same.' Under the Anti-Injunction Act, the word 'restrain' keeps no such company and, therefore, no such inference would be either possible or proper.

*Maze*, 2016 WL 4007075, at *12 (citations omitted).[3]

Second, and more fundamentally, the Plaintiffs are simply wrong to claim (Plfs. Br. 25-26) that because information-gathering is a distinct step preceding assessment, *see Direct Marketing*, 135 S.Ct. at 1130, the AIA must permit suits over

---

[3] Relatedly, the Plaintiffs are wrong to suggest (Plfs. Opp. 20) that setting aside a rule or a statute is not covered by the AIA because vacating a rule and granting an injunction are different forms of relief. The text and purpose of the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), compel the conclusion that they cover all prospective relief that interferes with the assessment of taxes, whether specific or general and no matter how denominated.

rules articulating the circumstances under which an assessment will occur. In *Direct Marketing*, Colorado could still impose a use tax on its residents, with or without the information reporting required by the challenged statute. Here, the Plaintiffs' requested remedy does, in fact, stop assessment of tax. I.R.C. § 7874 imposes tax consequences if the former shareholders in the U.S. target corporation own at least 60% of the new foreign parent by reason of their ownership in the U.S. target (and other requirements are met). The Rule provides additional instructions for the ownership percentage calculation, clarifying that foreign acquirers cannot avoid the statute by stuffing themselves with historically U.S.-based assets. Setting aside the Rule would unquestionably restrain the assessment of corporate income tax in the situations to which the Rule applies, and that is sufficient to trigger the application of the AIA. *See, e.g.*, *Bob Jones Univ.*, 416 U.S. at 739.[4]

### C. The Plaintiffs Do Not Fit Within the Judicial Exceptions.

Nor do the Plaintiffs fit within either of the judicial exceptions to the Anti-Injunction Act. One, established in *South Carolina v. Regan*, 465 U.S. 367, 373 (1984), provides that the Anti-Injunction Act does not bar a suit if it is impossible for the aggrieved party to contest the legality of a particular tax in any other way. Plaintiffs argue that because they will not engage in an inversion transaction due to the Rule, there is no alternative avenue to challenge the Rule, since "no tax is or

---

[4] Furthermore, the Plaintiffs are wrong to claim that because other cases, including *City of New York*, did not discuss the Anti-Injunction Act, the Act must not have applied. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian School Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).

ever will be owed." (Plfs. Opp. 29 (emphasis omitted).) That logic would expand the narrow exception the Supreme Court drew in *South Carolina* to virtually swallow the AIA. By the Plaintiffs' lights, taxpayers could obtain rulings on *any* transaction's tax consequences before the transaction actually occurs—all that is required is a claim that they have not yet engaged in the transaction because of the IRS's purportedly incorrect interpretation of the tax law, and will not do so as long as the IRS's interpretation stands.

The Supreme Court plainly did not mean to extend the exception that far. In *South Carolina*, it was *legally* impossible for the State to vindicate its rights in any other way: as a State, it was not subject to federal taxes, so unless it could sue directly, it would be forced to "find a third party to *contest its claims*." 465 U.S. at 381 (emphasis added.) Here, the Plaintiffs do not seriously dispute that their members *could* obtain relief by filing a refund suit—that is, they could contest their own claims. They only argue that their members might not be able to convince another business to engage in the inversion. (*See* Plfs. Opp. 29-30.) That premise would expand *South Carolina* well beyond the narrow exception for circumstances "where . . . Congress has not provided the plaintiff with an alternative *legal* way to challenge the validity of a tax." 465 U.S. at 373 (emphasis added).

Nor does the second exception to the AIA, set out in *Williams Packing*, the United States incorporates its arguments from its response to the Plaintiffs' Motion for Summary Judgment that the Rule is not arbitrary and capricious. The *Williams Packing* judicial exception applies only "if it is clear that under no circumstances

could the Government ultimately prevail . . . and . . . equity jurisdiction otherwise exists." *Id.* at 7. *See also id.* ("Only if it is . . . apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained."). As long as the merits questions are not "clear," the exception does not apply.

The Plaintiffs' reliance on *Lucia v. United States*, 474 F.2d 565 (5th Cir. 1973) (en banc), is misplaced. *Lucia* concerned a much different procedural posture—a jeopardy assessment. *See* 447 F.2d 912, 913 (5th Cir. 1971) (panel opinion). A few years later, in *Commissioner v. Shapiro*, 424 U.S. 614 (1976), the Supreme Court dealt with that situation. It held that the Anti-Injunction Act did not bar a suit to enjoin a jeopardy levy until the government showed that its assessment "ha[d] a basis in fact." *Id.* at 629. To the extent that *Lucia* has any continuing force after *Shapiro*, it does not apply outside of the context of a jeopardy assessment or levy—and in any event it does not apply here, where the Plaintiffs have filed a motion for summary judgment and the United States has responded. The Court has enough information to determine whether, "under the most liberal view of the law and the facts," *Williams Packing*, 370 U.S. at 7, the United States could prevail. It could, so the *Williams Packing* exception does not apply.

## III. Conclusion

For the foregoing reasons, and those in the Defendants' Motion to Dismiss (Dkt. 31), the Court should dismiss this case for lack of subject-matter jurisdiction.

Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

Date: November 18, 2016          /s/ Adam Strait
ADAM D. STRAIT (Mass. BBO No. 670484)
PAUL T. BUTLER (MD Bar No. 9406230037)
Trial Attorneys
U.S. Department of Justice, Tax Division
P.O. Box 683
Washington, D.C. 20044-0683
Telephone: (202) 307-2135
Fax: (202) 307-2135
adam.d.strait@usdoj.gov
paul.t.butler@usdoj.gov

MICHELLE C. JOHNS
Texas State Bar No. 24010135
Department of Justice, Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9762
(214) 880-9741 (FAX)
Michelle.c.johns@usdoj.gov


*Of counsel:*
RICHARD L. DURBIN
United States Attorney
Western District of Texas

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2016, I filed the foregoing with the Court in this case through the Court's CM/ECF system. I further certify that as a result of filing the document with the Court, pursuant to Local Rule CV-5(b), I served a copy of it on the following:

Laura Durfee (ldurfee@jonesday.com)

Michael A. Carvin (macarvin@jonesday.com)

Andrew M. Eisenberg (ameisenberg@jonesday.com)

Gerald Brinton Lucas (blucas@jonesday.com)

Jacob M. Roth (yroth@jonesday.com)

Raymond J. Wiacek (rjwiacek@jonesday.com)

*Attorneys for the Plaintiffs*

Kathryn Comerford Todd (ktodd@uschamber.com)

Lily Fu Claffee (lclaffee@uschamber.com)

Steven P. Lehotsky (slehotsky@uschamber.com)

Warren Postman (wpostman@uschamber.com)

*Attorneys for Plaintiff Chamber of Commerce of the United States of America*

I further certify that I served a copy of the document on the following by first-class mail:

Rachael Abelson Harris
Pierre H. Bergeron
Charles E. Talisman
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037

Linda Kelly
National Association of Manufacturers
733 10th Street NW, Suite 700
Washington, DC 20001

Dylan O. Drummond
Squire Patton Boggs (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, TX 75201

*Attorneys for Proposed Amicus National Association of Manufacturers*


Date: November 18, 2016           /s/ Adam Strait
                                         ADAM D. STRAIT
                                         Trial Attorney
                                         U.S. Department of Justice, Tax Division