IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 OCT -6 PM 3:53
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND TEXAS ASSOCIATION OF BUSINESS, PLAINTIFFS, | § § § § § | |
| V. | § § § | CAUSE NO. 1:16-CV-944-LY |
| INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF THE TREASURY, JOHN A. KOSKINEN, AND JACOB J. LEW, DEFENDANTS. | § § § § § § | |

**AMENDED ORDER**

Before the court are Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Clerk's Doc. No. 31), Plaintiffs' Motion for Summary Judgment (Clerk's Doc. No. 32), and all responsive and supplemental filings thereto. On January 18, 2017, the court conducted a hearing on the motions at which all parties were represented by counsel. Having reviewed and considered the motions, responsive and supplemental filings, arguments of counsel, and applicable law, the court renders the following order.

**I. BACKGROUND**

In April 2016, the Internal Revenue Service and the United States Department of the Treasury (the "Treasury Department") (together, the "Agencies") issued a rule identifying stock of foreign acquiring corporations that is to be disregarded in determining an ownership fraction relevant to categorization for federal-tax purposes because the stock is attributable to prior domestic-entity acquisitions. 26 C.F.R. § 1.7874-8T (the "Rule"). The Rule was simultaneously issued as a temporary regulation effective immediately and as a proposed regulation subject to

notice and comment. 26 C.F.R. § 1.7874-8T(j); Prop. Treas. Reg. § 1.7874-8, 81 Fed. Reg. 20,588–591.

Plaintiffs, the Chamber of Commerce of the United States of America (the "Chamber") and the Texas Association of Business, now bring this lawsuit asserting Defendants, the Internal Revenue Service, Treasury Department, John A. Koskinen, and Jacob J. Lew, violated the Administrative Procedures Act (the "APA") by promulgating the Rule. *See* 5 U.S.C. §§ 500–96. Plaintiffs argue the Rule exceeds the Agencies' statutory jurisdiction and that promulgation of the Rule was arbitrary and capricious and done without notice and opportunity for comment in violation of the APA. *See* 5 U.S.C. § 706. Plaintiffs move for summary judgment on their claims. Defendants move to dismiss this case, arguing Plaintiffs lack standing to challenge the Rule, and that this suit is barred by the Anti-Injunction Act. *See* 26 U.S.C. § 7421.

## II. STANDING

Defendants argue that this case should be dismissed for lack of standing because Plaintiffs have not alleged an injury in fact that justifies prospective relief. *See* Fed. R. Civ. P. 12(b)(1). Standing is an "irreducible constitutional minimum" of the court's ability to adjudicate a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–03 (1998). To establish standing, the party asserting jurisdiction must demonstrate three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 559, 560 (1992). First, a plaintiff must have suffered an "injury in fact," or an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical." *Id.* (internal citations omitted). Second, there must be a causal connection between the injury and the conduct complained of. *Id.* The injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent

2

action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 561.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[1] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiffs allege they have standing based on the fact that Allergan plc ("Allergan") is a member of the Chamber and the Greater Waco Chamber of Commerce, which is a member of Texas Association of Business. Plaintiffs assert that the Rule eliminated tax benefits associated with a proposed merger contemplated by Allergan that was announced in November 2015. At the time the merger was proposed, the corporate composition of Allergan was the product of several acquisitions of United States corporations by a foreign corporation over the previous three years. As a result of the previous acquisitions, the entity that would have resulted from the proposed merger would have been categorized as a United States corporation due to application of the Rule and thus would have been subject to United States federal income tax. Before promulgation of the Rule, the entity would not have been subject to the tax.

In *Clinton v. City of New York*, the Supreme Court held that a cooperative had standing to challenge the Line Item Veto Act, because under the act the President of the United States had vetoed an item granting a tax benefit to potential business partners of the cooperative. 524 U.S. 417, 436 (1998). The vetoed item would have permitted owners of certain food processors to defer recognition of gain if they sold their stock to eligible cooperatives, such as the plaintiff in *Clinton*. *Id.* at 423. The cooperative asserted it was engaged in negotiations to enter into a

---

[1] Defendants do not contest the latter two elements.

3

transaction affected by the tax benefit when the president vetoed the item and was searching for possible transactions in case the veto was invalidated. *Id.* at 432. The Supreme Court concluded that "[b]y depriving them of their statutory bargaining chip, the [veto] inflicted a sufficient likelihood of economic injury to establish standing under our precedents." *Id.*

In *Bryant v. Yellen*, the Supreme Court held that a group of farmworkers that desired to purchase lands in a certain area had standing to challenge a law that, if held to be applicable to the area, could cause land in that area to be available for purchase at prices below market value. 447 U.S. 352, 366 (1980). The Court concluded that "even though they could not with certainty establish that they would be able to purchase excess lands if [the law] were held applicable," the farmworkers "had a sufficient stake in the outcome of the controversy to afford them standing." *Id.* at 367.

In order to determine whether Plaintiffs have standing, the court must consider whether "its members would have standing to sue in their own right." *Hunt*, 432 U.S. at 343. The court concludes that at least one of Plantiffs' members, Allergen, would have standing to sue. Like the farmworkers in *Bryant*, Allergen is unable to point to a specific transaction it would be able to consummate if successful in its lawsuit. *Id.* The purpose of the Rule is to make inversions so economically infeasible that companies will elect not to pursue them, and the Rule has succeeded in doing exactly that. Allergen need not engage in futile negotiations for deals that have been altogether foreclosed or made economically impracticable by the Rule. It is enough that Allergen identified a specific transaction that was thwarted by the Rule and asserted that it would actively pursue other inversions if this court were to set aside the challenged Rule.

In addition, the court concludes that Plaintiffs have standing because one of its members, Allergen, was a targeted object of the challenged Rule. "When the suit is one challenging the

legality of government action" and "the plaintiff is himself an object of the action," there "is ordinarily little question that the action . . . has caused him injury." *Lujan*, 504 U.S. at 561–62. Although the rule may be facially neutral rule of general application, Plaintiffs include proof that the Treasury Department specifically targeted Pfizer-Allergen by specifically using the history of inversions by Allergen to construct the regulation. This is sufficient to establish an injury in fact. Because Pfizer would have standing to sue in its own right, the court concludes that the Chamber of Commerce has sufficient associational standing. Thus, Plaintiffs have alleged an actual, concrete injury, that is fairly traceable to implementation of the Rule, and that would be redressed by a decision setting aside that Rule. *See Lujan*, 504 U.S. at 560.

The court concludes Plaintiffs have standing to challenge the Rule.

### III. THE ANTI-INJUNCTION ACT

Defendants argue Plaintiffs' claims are barred by the Anti-Injunction Act. *See* 26 U.S.C. § 7421. "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). "The principal purpose of the [Anti-Injunction] Act is to protect the government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement interference, and to require that the legal right to the disputed sums be determined in a suit for refund." *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).

Assessment and collection of taxes does not include all activities that may improve the government's ability to assess and collect taxes. *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1131 (2015) (applying Tax Injunction Act but stating that Court "assume[s] that words used in both Acts are generally used in the same way" and "discern[s] the meaning of the terms in the

[Anti-Injunction Act] by reference to the broader Tax Code"). In *Direct Marketing*, an association of retailers challenged Colorado's law requiring retailers to give notice of use-tax liability to customers and report purchases subject to the use tax to the Colorado Department of Revenue. *Id.* at 1128. To determine whether the lawsuit was barred by the Tax Injunction Act, the Court looked to whether enforcement of the notice and reporting requirements is an act of assessment or collection as those terms are used in the Internal Revenue Code. *Id.* at 1131; *see* 26 U.S.C. §§ 1-9834. The Court stated that "[a]ssessment... refers to the official recording of a taxpayer's liability, which occurs after information relevant to the calculation of that liability is reported to the taxing authority" and "might also be understood more broadly to encompass the process by which that amount is calculated." *Id.* at 1130. Collection, the Court stated, is "the act of obtaining payment of taxes due." *Id.* Thus, "the notice and reporting requirements precede the steps of 'assessment' and 'collection.'" Accordingly, the Court concluded the lawsuit was not barred by the Tax Injunction Act because "[e]nforcement of the notice and reporting requirements may improve Colorado's ability to assess and ultimately collect its sales and use taxes from consumers, but the [Tax Injunction Act] is not keyed to all activities that may improve a State's ability to assess and collect taxes." *Id.*

Here, Plaintiffs do not seek to restrain assessment or collection of a tax against or from them or one of their members. Rather, Plaintiffs challenge the validity of the Rule so that a reasoned decision can be made about whether to engage in a potential future transaction that would subject them to taxation under the Rule. Further, the Rule is not a tax, but a regulation determining who is subject to taxation under provisions of the Internal Revenue Code. *See* 26 U.S.C. §§ 1-9834. Enforcement of the Rule precedes any assessment or collection of taxes. Although the Rule may improve the government's ability to assess and collect taxes,

enforcement of the Rule does not involve assessment or collection of a tax. *See Direct Mktg.*, 135 S. Ct. at 1132.

The court concludes that Plaintiffs' claims are not barred by the Anti-Injunction Act.

## IV. VIOLATION OF THE APA

Plaintiffs argue the Agencies violated the APA in issuing the Rule because the Rule exceeds the Agencies' statutory jurisdiction, the Agencies engaged in an arbitrary and capricious rulemaking, and the Agencies failed to provide affected parties with notice and an opportunity to comment on the Rule.

### A. *Statutory Authority*

"The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be...in excess of statutory jurisdiction, authority, or limitations, or short of statutory right...." 5 U.S.C. § 706. The Rule was issued pursuant to statutory authority in the Internal Revenue Code, which provides:

> The Secretary shall prescribe such regulations as may be appropriate to determine whether a corporation is a surrogate foreign corporation, including regulations— (A) to treat warrants, options, contracts to acquire stock, convertible debt interests, and other similar interests as stock, and (B) to treat stock as not stock.

26 U.S.C. § 7874(c)(6). And further,

> The Secretary shall provide such regulations as are necessary to carry out this section, including regulations providing for such adjustments to the application of this section as are necessary to prevent the avoidance of the purposes of this section, including the avoidance of such purposes through— (1) the use of related persons, pass-through or other noncorporate entities, or other intermediaries, or (2) transactions designed to have persons cease to be (or not become) members of expanded affiliated groups or related persons.

26 U.S.C. § 7874(g). The statute uses terms granting broad authority to the Secretary of the Treasury for example: "such regulations as may be appropriate" and "such regulations as are

7

necessary to carry out this section." The statute does not limit the broad authority granted in the first part of each subsection by identifying regulations that would not be appropriate or providing boundaries to the Secretary's authority under the statute. Instead, the statute gives examples of what the Secretary may employ by using the word "including" several times. Further, the examples given in the statute of regulations the Secretary may issue include significant authorizations, such as the authority to "treat stock as not stock," which could substantially alter a calculation under the statute based on the stock of a corporation.

Based on the broad authority granted by Congress, the court concludes the Rule does not exceed the statutory jurisdiction of the Agencies. The Rule directs that certain stock be disregarded in calculations made under the statute, which falls into the statute's allowance that regulations may "treat stock as not stock." Further, the Rule aims to "prevent the avoidance of the purposes" of the statute, which is specifically named as an authorized function of regulations issued pursuant to the statute.

The court concludes the Rule does not exceed the statutory jurisdiction of the Agencies.[2]

### B. Arbitrary and Capricious

"The reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Generally, agency action is arbitrary and capricious if the agency has relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the issue before it, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed

---

[2] The material facts are not in dispute in this case and the court concludes Plaintiffs' statutory-jurisdiction claim fails as a matter of law. The court will therefore order that Plaintiffs take nothing on their claim that Defendants violated the APA by exceeding their statutory authority.

8

to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The standard of review is highly deferential to the action of the agency, and a reviewing court "may not use review of an agency's environmental analysis as a guise for second-guessing substantive decisions committed to the discretion of the agency." *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 678 (5th Cir. 1992).

The Agencies provide a thorough explanation and basis for the Rule in the preamble to the notice of proposed rulemaking published in the Federal Register. The preamble states that the Rule "address[es] transactions that are structured to avoid the purposes of sections 7874 and 367 of the Internal Revenue Code ... and certain post-inversion tax avoidance transactions." 81 Fed. Reg. 20858. It further explains the policy behind the Rule:

> The Treasury Department and the IRS are concerned that a single foreign acquiring corporation may avoid the application of section 7874 by completing multiple domestic entity acquisitions over a relatively short period of time, in circumstances where section 7874 would otherwise have applied if the acquisitions had been made at the same time or pursuant to a plan (or series of related transactions). In these situations, the value of the foreign acquiring corporation increases to the extent it issues stock in connection with each successive domestic entity acquisition, thereby enabling the foreign acquiring corporation to complete another, potentially larger, domestic entity acquisition to which section 7874 will not apply. In some cases, a substantial portion of the value of a foreign acquiring corporation may be attributable to its completion of multiple domestic entity acquisitions over the span of just a few years, with that value serving as a platform to complete still larger subsequent domestic entity acquisitions that avoid the application of section 7874. That is, the ownership percentage determined with respect to a subsequent domestic entity acquisition may be less than 60, or less than 80, if the shares of the foreign acquiring corporation issued in prior domestic entity acquisitions are respected as outstanding (thus, included in the denominator but not the numerator) when determining the ownership fraction.

81 Fed. Reg. 20865. The preamble concludes that the "Treasury Department and the IRS have determined that this approach, which takes into account subsequent fluctuations in value

attributable to the prior domestic entity acquisition, best reflects the policies underlying section 7874, including the ownership fraction." 81 Fed. Reg. 20866.

The court has reviewed the full analysis by which the Agencies determined the Rule is necessary to achieve the goals of the Internal Revenue Code. The court concludes the Agencies did not rely on factors that Congress did not intend for them to consider or fail to consider an important aspect of the issue before them. *Motor Vehicle Mfrs.*, 463 U.S. at 43. The Agencies offered a plausible explanation for the Rule that does not run counter to the evidence before them. *See id.*

Accordingly, the court concludes the Agencies did not engage in an arbitrary and capricious rulemaking in issuing the Rule.[3]

### C. *Notice and Comment*

Plaintiffs argue the Agencies violated the APA in issuing the Rule because they failed to provide affected parties with notice and an opportunity to comment on the Rule. The Rule was simultaneously issued as a temporary regulation effective immediately and as a proposed regulation subject to notice and comment. 26 C.F.R. § 1.7874-8T; Prop. Treas. Reg. § 1.7874-8, 81 Fed. Reg. 20,588–591. Plaintiffs do not assert that Defendants have failed undergo the notice-and-comment procedure required by the APA with regard to the Rule as a proposed regulation, but argue the Rule as a temporary regulation became effective without a 30-day notice period or opportunity for comment as required by the APA. The court's analysis with regard to the APA's notice-and-comment requirements is therefore confined to the Rule as a temporary regulation. 26 C.F.R. § 1.7874-8T.

---

[3] The material facts are not in dispute in this case and the court concludes Plaintiffs' arbitrary-and-capricious-rulemaking claim fails as a matter of law. The court will therefore order that Plaintiffs take nothing on their claim that Defendants violated the APA by engaging in arbitrary and capricious rulemaking.

> General notice of proposed rule making shall be published in the Federal Register.
>
> ....
>
> After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.
>
> ....
>
> The required publication or service of a substantive rule shall be made not less than 30 days before its effective date....

5 U.S.C. § 553. Defendants do not assert the Agencies complied with the APA's notice-and-comment requirements. Instead, they argue the Rule is a temporary regulation, which the Agencies have authority to issue without notice and comment. *See* 26 U.S.C. § 7805(e). Alternatively, Defendants argue notice and comment is not required with regard to the Rule because it is an interpretive regulation. *See* 5 U.S.C. § 553(b).

### 1. *Exception for Temporary Regulations*

The Rule was issued both as a temporary regulation effective immediately and as a proposed regulation subject to notice and comment. Defendants argue the Agencies may issue temporary regulations without subjecting them to notice and comment before they become effective if the regulation is simultaneously issued as a proposed regulation subject to notice and comment. *See* 26 U.S.C. § 7805. The APA provides that a "[s]ubsequent statute may not be held to supersede or modify [the notice-and-comment procedure]... except to the extent that it does so expressly." 5 U.S.C. § 559.

> The provision allowing the Treasury Secretary to issue temporary regulations reads:
>
> Any temporary regulation issued by the Secretary shall also be issued as a proposed regulation.
>
> ....
>
> Any temporary regulation shall expire within 3 years after the date of issuance of such regulation.

26 U.S.C. § 7805(e). The statute does not expressly exempt temporary regulations from the APA's requirement that publication be made not less than 30 days before a rule's effective date. *See* 5 U.S.C. § 553; 26 U.S.C. § 7805.

Defendants argue that Congress's intent to make a substantive change to the APA is clear in the wording of the statute allowing for temporary regulations. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 686 (D.C. Cir. 1984) ("[T]he import of the § 559 instruction is that Congress's *intent to make a substantive change* be clear.") (emphasis in original). The court disagrees. The statute specifically refers to permissible effective dates of regulations and publication of notice in the Federal Register as required by the APA but does not mention an exception for temporary rules. *See* 26 U.S.C. § 7805(b) ("[N]o temporary, proposed, or final regulation relating to the internal revenue laws shall apply to any taxable period ending before the earliest of the following dates: … In the case of any final regulation, the date on which any proposed or temporary regulation to which such final regulation relates was filed with the Federal Register…."). The statute puts additional restrictions on when a regulation may become effective; it neither explicitly states nor suggests congressional intent to allow a regulation to become effective earlier in relation to publication than provided for in the APA. *See id.*

Defendant argues the legislative history indicates Congress's intent to allow the Treasury Department's practice of passing temporary rules effective immediately without a 30-day notice period or opportunity for comment. The court will not disregard explicit directives of the APA in favor of legislative history. *See Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) (emphasizing the APA's "statutory intent that legislative departure from the norm must be clear"); *see also Intermountain Ins. Serv. of Vail Liab. Co. v. C.I.R.*, 134 T.C. 211, 246–47 (2010) (Halpern &

Holmes, JJ., concurring in result) (concluding temporary regulations should be invalidated for failing to comply with notice and comment provisions of the APA); *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) ("It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later.").

The court concludes that the temporary nature of the Rule does not excuse the Agencies from the notice-and-comment procedure required by the APA.

### 2. *Interpretive Exception*

The APA permits agencies to issue interpretative rules without subjecting them to notice and comment. *Id.* A rule is interpretative if it is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015); *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995). In contrast, a substantive rule, also known as a legislative rule, "affect[s] individual rights and obligations," and is "issued by an agency pursuant to statutory authority." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979). Legislative rules have the "force and effect of law." *Perez*, 135 S. Ct. at 1203. "Generally speaking…'substantive rules,' or 'legislative rules' are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means." *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 619 (5th Cir. 1994).

The Rule was issued pursuant to statutory authority in the Internal Revenue Code, which provides:

> The Secretary shall prescribe such regulations as may be appropriate to determine whether a corporation is a surrogate foreign corporation, including regulations— (A) to treat warrants, options, contracts to acquire stock, convertible debt interests, and other similar interests as stock, and (B) to treat stock as not stock.

26 U.S.C. § 7874(c)(6). And further,

> The Secretary shall provide such regulations as are necessary to carry out this section, including regulations providing for such adjustments to the application of this section as are necessary to prevent the avoidance of the purposes of this section, including the avoidance of such purposes through— (1) the use of related persons, pass-through or other noncorporate entities, or other intermediaries, or (2) transactions designed to have persons cease to be (or not become) members of expanded affiliated groups or related persons.

26 U.S.C. § 7874(g).

Defendants argue the Rule is interpretive because it clarifies terms in the statute and provides additional detail to advise the public how the Treasury Department construes the statute. The court disagrees. The statute authorizing the Treasury Secretary to promulgate the Rule states that the regulations may "provid[e] for ... adjustments to the application of this section." 26 U.S.C. § 7874(g). Permitted regulations under the statute include "regulations ... to treat stock as not stock." 26 U.S.C. § 7874(c)(6). Adjustments to application and treating stock as if it were not stock are not mere interpretations of the statute, but substantive modifications to the application of the statute.

> The Internal Revenue Code provides that:
>
> [a] foreign corporation shall be treated as a surrogate foreign corporation if, pursuant to a plan (or a series of related transactions) —
> ...
> [*inter alia*,] after the acquisition at least 60 percent of the stock (by vote or value) of the entity is held—
>    (I) in the case of an acquisition with respect to a domestic corporation, by former shareholders of the domestic corporation by reason of holding stock in the domestic corporation....

26 U.S.C. § 7874(a)(2)(B)(ii). The Rule provides:

> for purposes of determining the ownership percentage by value (but not vote) described in [the Internal Revenue Code], stock of the foreign acquiring corporation is excluded from the denominator of the ownership fraction in an amount equal to the sum of the excluded amounts computed separately with respect to each prior domestic entity acquisition and each relevant share class.

14

26 C.F.R. 1.7874-8T(b). The Rule therefore changes the computation for determining whether a corporation shall be treated as a surrogate foreign corporation by directing that certain stock that would otherwise be included in the calculation is excluded.

The court concludes the Rule is a substantive or legislative regulation, not an interpretive regulation, and the Agencies are therefore not excused from the notice-and-comment procedure required by the APA.

## V. CONCLUSION

The court concludes that the Rule was unlawfully issued without adherence to the APA's notice-and-comment requirements. When a reviewing court finds an agency action to have been carried out "without observance of procedure required by law," the court shall "hold unlawful and set aside" the action. 5 U.S.C. § 706. Accordingly, the court will grant summary judgment in favor of Plaintiffs on their claim that Defendants failed to complete the notice-and-comment procedure required by the APA and set aside the Rule.

**IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Clerk's Doc. No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Clerk's Doc. No. 32) is **GRANTED** with regard to Plaintiffs' claim that Defendants violated the APA by failing to provide notice and an opportunity for comment. In all other respects, the motion is **DENIED**.

The court will render final judgment accordingly.

SIGNED this 6th day of October, 2017.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE